CHRISTIAN T. CHRISTENSEN, APPELLANT, *v.* THE ILLI-
NOIS AND ST. LOUIS BRIDGE COMPANY AND AMOS
F. ENO, RESPONDENTS.

*Bonds received from a corporation without any consideration — liability of the party
receiving them to a judgment-creditor of the corporation — what must be shown to
justify a recovery.*

The property of a railroad corporation having been sold under a foreclosure of the
first mortgage thereon, the amount realized was not sufficient to pay the amount
due upon such first mortgage. It appeared, however, that, pending the foreclosure
proceedings, the first, second and third mortgage bondholders of the corporation
entered into an agreement for reorganization, and the purchaser at the fore
closure sale purchased, as the representative of all the parties to the reorganiza-
tion agreement, and that such reorganization agreement was carried out by
the formation of a new corporation, which purchased the property sold
under the foreclosure, from the purchaser at such foreclosure sale, and that
stock and securities of such new company were issued to the holders of the first,
second and third mortgage bonds of the old company according to the terms of
the agreement.

In an action brought by a judgment-creditor of the corporation to recover the
amount of the indebtedness of the corporation to him, against a party who had,
without consideration therefor, received second mortgage bonds of the company,
and had, under the terms of the reorganization agreement, received stock and
securities therefor.

*Held,* that the fact that the parties holding securities of the old company entered
into an agreement, by which the results of the foreclosure were disposed of in a
certain way, did not confer upon the creditors of the old company any right, as
against the parties to such agreement, in which neither it nor any of the creditors
thereof had any interest.

That it was necessary, in order to establish a right to recover in such a case, that
it should be shown that the defendant, who had received such bonds without
consideration, had withdrawn on account thereof something from the funds of
the company.

That proof that one of the coupons upon the bonds had been paid did not raise a
presumption that such payment had been made by the company.

APPEAL by the plaintiff from a judgment rendered upon a trial at
the New York Special Term, dismissing the complaint, and entered
in the office of the clerk of the county of New York on the 29th
day of March, 1888.

*C. E. Tracy,* for the appellant.

*W. Man,* for the respondents.

VAN BRUNT, P. J.:

The plaintiff is a judgment-creditor of the Illinois and St. Louis Bridge Company, upon whose judgment an execution has been returned unsatisfied.   He seeks by this action to enforce an alleged liability of the defendant Eno, who, as a stockholder of that company, received $1,000 of its stock, without consideration, and also $10,000 of its second mortgage bonds, likewise without consideration, which stock and bonds the defendant Eno has disposed of.

This action has been previously tried and judgment rendered in favor of the plaintiff against the defendant Eno, which judgment was affirmed upon appeal at the General Term; but, upon further appeal to the Court of Appeals, the judgment was reversed and a new trial ordered.   The court held that the plaintiff had failed to make out a right to recover against the defendant Eno on account of his receipt of stock of the company ; and in respect to the bonds the court said as follows:  " The question as to the right of the plaintiff to compel the defendant to account for the sum realized by him on the sale of the bonds, is affected by the fatal difficulty that the defendant has received nothing from the corporation except its promise to pay, which has never been performed.   The defendant has withdrawn nothing from the funds of the company on account of the bonds (unless it may be a sum represented by a single interest coupon), and creditors have not been prejudiced by the transaction.   It it alleged, and it was offered to be proved, that the property of the company had been sold on the foreclosure of the first mortgage.   It is unnecessary to consider what the rights or liabilities of the defendant would be in respect to the bonds as between himself and other creditors of the corporation on a distribution of assets, or if it had appeared that the corporation had paid the bonds issued to the defendant.   The situation in either of these aspects is not presented.   This is not a case of following assets of a corporation wrongfully transferred.   The defendant has received none of the funds or assets of the company available to creditors. The loss on the bonds falls on those who have purchased them, relying on the credit of the corporation.   The situation of the general creditors has not, so far as appears, been affected by the fact that the company received nothing for the bonds."

It is claimed that, upon the new trial, the objections which the court raised to the right of the plaintiff to recover have been removed by new evidence, namely, that the defendant has collected from the company one interest coupon amounting to $350, and that the mortgage securing these bonds has been foreclosed, and that under and by virtue of the agreement for reorganization, made between the holders of said bonds and others, the mortgaged premises were bid in and turned over to a new company, upon condition of its issuing new securities to the holders of said bonds, and that the defendant or his assigns received such new securities as were allotted to them.

Upon an examination of the evidence, however, we fail to find that there has been any change made which tends in any way to remove the difficulties which existed at the time this case was previously before the Court of Appeals. The objection that the defendant has withdrawn nothing from the funds of the company on account of the bonds has not been met by any proof in regard to the payment of the interest coupon, because there is no evidence whatever, so far as we have been able to discover, showing that that coupon was paid by the company. It is claimed that, from the payment of the coupon, a presumption of payment by the company arises, but where it is sought to impose a liability by reason of the receipt of this payment, because of the fact of its having come from a certain source, it is necessary for the plaintiff to establish that it came from that source and not rest his case upon barren presumption.

In order to fasten this obligation upon the defendant, it was necessary to show that the defendant had withdrawn something from the funds of the company on account of the bonds, and not by simply showing that a coupon had been paid without proving by whom it had been paid. It is further claimed that it was proved that the defendant had withdrawn something from the funds of the company because the mortgage securing those bonds has been foreclosed, and that under the reorganization agreement between the holders of all the bonds of the company a new company was organized and the defendant received some of the stock of that company. A brief consideration of the circumstances of the foreclosure will show that, by reason thereof, neither the defendant nor his assigns

received any of the funds of the company from whom he had received the bonds.

It appears, from the decree of foreclosure and the reorganization agreement, that there were two sets of mortgage bonds issued by the bridge company (the bonds in question which the defendant received being second-mortgage bonds of that company), and that, by the decree of foreclosure and sale, it was adjudged that there were 4,000 of the first-mortgage bonds outstanding, upon which there was due, at the date of the decree, the sum of $4,096,571.83, and that there were 2,000 of the second-mortgage bonds outstanding, upon which there was due $2,593,255.88, and that the foreclosure proceedings were for the foreclosure of the mortgages given to secure these two sets of bonds. It was further provided by the decree that the property should be sold, and that the purchaser should pay certain sums, in cash, upon the confirmation of the sale, and that the balance might be paid in first-mortgage bonds, provided the amount of the bid of the purchaser did not exceed the entire debt so found to be due on the first mortgage and the amount of cash to be paid; but if the bid of the purchaser did exceed that amount, the decree provided that the purchaser might, for the residue of his bid, turn in second-mortgage bonds in a manner similar to that provided for the first-mortgage bonds. Upon the sale the amount bid for the property did not equal the amount due upon the first-mortgage bonds, and the property was conveyed to the purchaser upon the receipt of the amount of his bid, and no part whatever of the purchase-price went towards the redemption of, or payment in part of, the money found to be due upon the second-mortgage bonds. Therefore no part of the property of the Illinois and St. Louis Bridge Company was devoted, by means of this foreclosure, to the payment of any obligation arising upon these second-mortgage bonds.

Pending these foreclosure proceedings the first, second and third mortgage bondholders entered into an agreement for reorganization, and the purchaser at the foreclosure sale purchased as the representative of all the parties to this reorganization agreement; and such reorganization agreement was carried out by the formation of a new corporation, which purchased the property sold under the foreclosure from the purchaser at such foreclosure sale, and the stock and securi-

ties of such new company were issued to the holders of the first, second and third mortgage bonds of the old company according to the terms of this agreement.

By this proceeding it is difficult to see how the second-mortgage bondholders of the old company have withdrawn anything from the funds of the old company on account of the bonds. The foreclosure did not realize enough to pay the first-mortgage bonds. The purchase-price upon such sale was paid by the turning in of such first mortgage bonds. The holders of the second-mortgage bonds received no dividend upon their bonds from the price realized upon the foreclosure sale. All that they realized was what was given to them of the securities issued by the new company to whom the property of the old company was conveyed. At the time of this conveyance the old company had no interest in the property and no claim upon it. All the rights of the old company had been foreclosed, and none but the first-mortgage bondholders had received any benefit whatever from the securities of the old company which they held. If the parties holding securities of the old company entered into an agreement by which the results of the foreclosure were disposed of in a certain way, the creditors of the old company had nothing to do with this. If they desired to obtain possession of the property of the old company under this foreclosure, they should have bid at the sale, and certainly as long as there were no proceeds of the property of the old company arising from the foreclosure which could be applied toward the payment of any of those second-mortgage bonds, their existence has not operated as any disadvantage to the creditors of the old company; and the holders of such bonds cannot be said to have withdrawn anything from the funds of such company on account of the bonds. We are, therefore, of the opinion that there is no change made by the evidence, in the legal aspects of the case, from that which existed at the time it was previously decided by the Court of Appeals, and that the learned court below was right in dismissing the complaint.

The judgment appealed from should be affirmed, with costs.

MACOMBER and BARTLETT, JJ., concurred.

Judgment affirmed, with costs.